1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TAJHIKEEM WOODS,                         No.  2:14-cv-2458 MCE AC P

12                   Plaintiff,

13        v.                                  FINDINGS AND RECOMMENDATIONS

14   RODDRICK, et al.,

15                   Defendants.

16

17        I.      Introduction

18        Plaintiff is a state prisoner under the authority of the California Department of Corrections

19   and Rehabilitation (CDCR) who proceeds pro se and in forma pauperis with a civil rights action

20   under 42 U.S.C. § 1983, challenging the conduct of correctional officials at High Desert State

21   Prison (HDSP).  Several matters are before the court: screening of plaintiff's original and

22   amended complaints pursuant to 28 U.S.C. § 1915A, and review of plaintiff's requests for

23   extraordinary relief.  For the reasons that follow, this court recommends dismissal of this case

24   without prejudice and denial of plaintiff's requests for extraordinary relief as moot.

25        II.     Background

26        By order filed December 29, 2014, this court found that plaintiff's original complaint,

27   ////

28   ////

1

1    filed October 13, 2014,[1] ECF No. 1, stated potentially cognizable claims against defendant

2    Correctional Officer Roddrick for excessive force and retaliation, but failed to state cognizable

3    claims against the other named defendants, Correctional Sergeant Arnold and Correctional

4    Captain Hale.  See ECF No. 11.  Plaintiff was accorded the option of proceeding on his original

5    complaint against defendant Roddrick or filing an amended complaint.

6         Plaintiff filed his First Amended Complaint (FAC) on January 19, 2015, naming

7    defendants Roddrick, Arnold and Hale, as well as J. Ramsey, D. Davidge, T. Jackson, J. Sanchez,

8    J. Mason, "et al."  ECF No. 15 at 1.  In separate filings, plaintiff requested that this court direct

9    prison officials to stop retaliating against him for utilizing the prison grievance system, allegedly

10   by interfering with plaintiff's access to food, legal materials, legal mail and the law library, and

11   by threatening plaintiff with harm.  See ECF Nos. 14, 16-7.  Thereafter, plaintiff filed a notice of

12   change of address, from HDSP to the California Substance Abuse Treatment Facility (CSATF) in

13   Corcoran, indicating that he was transferred on February 26 and 27, 2015.  See ECF Nos. 18-9.

14        On June 12, 2015, this court recommended dismissal of this action without prejudice

15   because it appeared clear from both plaintiff's original complaint and FAC that he had failed to

16   exhaust his administrative remedies on his claims before commencing this action.  See ECF No.

17   20.  The court also recommended that plaintiff's requests for extraordinary relief be denied as

18   moot, due to his transfer from HDSP to CSATF.  Id.  Plaintiff filed objections in which he

19   requested, inter alia, that the court undertake substantive review of this case without requiring the

20   exhaustion of administrative remedies which plaintiff asserted were unavailable due to the alleged

21   misconduct of prison officials.  See ECF No. 23.

22        Following the district judge's adoption of the undersigned's findings and

23   recommendations, and the dismissal of this case without prejudice, see ECF Nos. 24, 25, plaintiff

24   filed a motion for protective order and notice that he had again been moved, this time to the

---

[1] Unless otherwise noted, petitioner's filing dates referenced herein are based on the prison mailbox rule, pursuant to which a document is deemed served or filed on the date a prisoner signs the document (or signs the proof of service, if later) and gives it to prison officials for mailing. See Houston v. Lack, 487 U.S. 266 (1988) (establishing prison mailbox rule); Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings by prisoners).

2

1   California Health Care Facility (CHCF) in Stockton, see ECF Nos. 27-6.  Plaintiff informed the

2   court that he had attempted suicide on July 30, 2015 (during the period between the undersigned's

3   findings and recommendations and the district judge's order adopting those findings and

4   recommendations), due to "verbal/mental abuse" by correctional staff and alleged physical abuse

5   resulting in an untreated foot injury.  See ECF No. 27.

6        In an abundance of caution, the undersigned recommended that this case be reopened to

7   reconsider the merits of plaintiff's FAC and to request that the Office of the California Attorney

8   General (AG) investigate plaintiff's allegations concerning his conditions of confinement; the

9   district judge agreed.  See ECF Nos. 28, 32.  This court asked the AG to contact CHCF

10  authorities and file a status report.  See ECF No. 28.  On October 2, 2015, Deputy Attorney

11  General (DAG) Martha Ehlenbach specially appeared to file a status report, which included the

12  declarations of plaintiff's treating physician, Dr. K. Yusufzie, M.D., and treating psychiatrist, Dr.

13  J. Johnson, M.D.  See ECF No. 29.  These declarations and the AG's status report indicate that

14  plaintiff was then receiving regular mental and physical health evaluations and treatment,

15  including an x-ray of his right foot to assess his allegedly untreated injury; that he was regularly

16  receiving pain and psychotropic medications; and that plaintiff was not then exhibiting suicidal

17  thoughts or behavior.  Id.

18       Plaintiff filed objections to the DAG's status report and supporting declarations, and to the

19  undersigned's most recent order and findings and recommendations.  See ECF No. 30, 33.

20  Plaintiff also filed a "motion for court order," seeking an order of this court directing staff at

21  CHCF to stop retaliating against him; to provide plaintiff with his legal property; to adequately

22  treat plaintiff's right foot; and to give plaintiff access to the law library and legal supplies.  See

23  ECF No. 31.

24       Thereafter, plaintiff notified the court that he had again been transferred, this time to Kern

25  Valley State Prison (KVSP).  See ECF No. 34.  On January 4, 2016, plaintiff filed another motion

26  for protective order, wherein he alleged that KVSP staff were "maliciously using the petitioner's

27  mental health treatment as a tool to mentally tourture (sic) petitioner, for the very purpose of

28  causing harm."  ECF No. 35.  That motion seeks a court order directing KVSP correctional

1    officials to provide food when plaintiff is administered his psychotropic medication (Geodon), to

2    alleviate side effects of stomach cramping and severe headaches.  Id.

3          The following week, plaintiff informed the court that he had been moved to Salinas Valley

4    State Prison (SVSP).  ECF No. 36.  On June 23, 2016, plaintiff informed the court that he had

5    been moved to California State Prison-Los Angeles County (CSP-LAC), with an anticipated

6    transfer to Folsom State Prison or to the CSP-LAC Enhanced Outpatient Program Yard.  ECF No.

7    37.  On July 29, 2016, plaintiff informed the court that he is again incarcerated at CHCF, and

8    "admitted to the Department of State Hospital Stockton due to a suicide attempt."  ECF No. 38.

9    Review of CDCR's Inmate Locator website[2] indicates that plaintiff, now age 26, currently

10   remains incarcerated at CHCF.

11         To summarize, since commencing this action plaintiff has been transferred from HDSP to

12   CSATF, to CHCF, to KVSP, to SVSP, to CSP-LAC, and back to CHCF, where plaintiff is

13   presently incarcerated.  Outstanding are three motions for intervention and/or preliminary

14   injunctive relief at three of these locations, each including new allegations against newly-named

15   correctional officials:  (1) a "motion for protective order," challenging matters at CSATF, which

16   was addressed by the AG's status report and supporting declarations, ECF No. 27; (2) a "motion

17   for court order," challenging matters at CHCF, ECF No. 31; and (3) a "motion for order of

18   protection," challenging matters at KVSP, ECF No. 35.

19         III.    Screening and Administrative Exhaustion

20              A.    Legal Standards

21         This court is required to screen complaints brought by prisoners seeking relief against a

22   governmental entity or an officer or employee of a governmental entity.  See 28 U.S.C. §

23   1915A(a).  This court "shall" dismiss a complaint or portion thereof if the prisoner has raised

24

25   [2]  See http://inmatelocator.cdcr.ca.gov/ (Inmate Locator website operated by the California
     Department of Corrections and Rehabilitation).  This Court may take judicial notice of facts that
26   are capable of accurate determination by sources whose accuracy cannot reasonably be
     questioned.  Fed. R. Evid. 201; see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th
27   Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable
     dispute.").
28

1   claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

2   granted, or that seek monetary relief from a defendant who is immune from such relief.  See 28

3   U.S.C. § 1915A(b).  This court must construe pro se pleadings liberally, and must accord the

4   plaintiff leave to amend unless it is clear that amendment could not cure the deficiencies in the

5   complaint.  See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000).

6        "The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust

7   'such administrative remedies as are available' before bringing suit to challenge prison

8   conditions."  Ross v. Blake, 136 S. Ct. 1850, 1854-55 (June 6, 2016) (quoting 42 U.S.C. §

9   1997e(a)).  "There is no question that exhaustion is mandatory under the PLRA[.]"  Jones v.

10   Bock, 549 U.S. 199, 211 (2007) (citation omitted) (cited with approval in Ross, 136 S. Ct. at

11   1856).  The exhaustion requirement is based on the important policy concern that prison officials

12   should have "an opportunity to resolve disputes concerning the exercise of their responsibilities

13   before being haled into court."  Jones, 549 U.S. at 204.  The "exhaustion requirement does not

14   allow a prisoner to file a complaint addressing non-exhausted claims."  Rhodes v. Robinson, 621

15   F.3d 1002, 1004 (9th Cir. 2010); McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per

16   curiam) ("a prisoner does not comply with [the exhaustion] requirement by exhausting available

17   remedies during the course of the litigation").

18        Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a

19   prison's grievance process as long as some remedy remains available.  "The obligation to exhaust

20   'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer

21   the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the

22   grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (original emphasis) (citing Booth

23   v. Churner, 532 U.S. 731, 739 (2001)).  "The only limit to § 1997e(a)'s mandate is the one baked

24   into its text:  An inmate need exhaust only such administrative remedies as are 'available.'"

25   Ross, 136 S. Ct. at 1862.

26        Thus, "an inmate is required to exhaust those, but only those, grievance procedures that

27   are 'capable of use' to obtain 'some relief for the action complained of.'"  Ross, 136 S. Ct. at

28   1859 (quoting Booth, 532 U.S. at 738).  The Supreme Court has clarified that there are only

1   "three kinds of circumstances in which an administrative remedy, although officially on the

2   books, is not capable of use to obtain relief."  Ross, at 1859.  These circumstances are as follows:

3   (1) the "administrative procedure . . . operates as a simple dead end – with officers unable or

4   consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme

5   . . . [is] so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary

6   prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from

7   taking advantage of a grievance process through machination, misrepresentation, or intimidation."

8   Id. at 1859-60 (citations omitted).  Other than these circumstances demonstrating the

9   unavailability of an administrative remedy, the mandatory language of 42 U.S.C. § 1997e(a)

10   "foreclose[es] judicial discretion," which "means a court may not excuse a failure to exhaust,

11   even to take [special] circumstances into account."  Ross, 136 S. Ct. at 1856-57.

12          Within the Ninth Circuit, dismissal of a prisoner civil rights action for failure to exhaust

13   administrative remedies must generally be decided pursuant to a motion for summary judgment

14   under Rule 56, Federal Rules of Civil Procedure.  Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014)

15   (en banc).  The only exception is "[i]n the rare event that a failure to exhaust is clear on the face

16   of the complaint."  Id. at 1166 (authorizing defendant to move for dismissal pursuant to Fed. R.

17   Civ. P. 12(b)(6)); see also Jones, 549 at 215 (exhaustion is not a pleading requirement but an

18   affirmative defense that, if apparent on the face of the complaint, may support dismissal); Wyatt

19   v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) ("A prisoner's concession to nonexhaustion is a

20   valid ground for dismissal, so long as no exception to exhaustion applies."), overruled on other

21   grounds by Albino, supra, 747 F.3d at 1166; Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir.

22   2006) ("Because Vaden did not exhaust his administrative remedies prior to sending his

23   complaint to the district court, the district court must dismiss his suit without prejudice.") (citing

24   Wyatt, 315 F.3d at 1120).

25          Even after Albino, when it is clear from the face of the complaint and any attached

26   exhibits that a plaintiff did not exhaust his available administrative remedies before commencing

27   an action, the action may be dismissed on screening for failure to state a claim.  See 28 U.S.C. §

28   1915A(b)(1) (upon screening, "the court shall . . . dismiss the complaint, or any portion of the

1    complaint, if the complaint  (1) . . . fails to state a claim upon which relief may be granted"); 42

2    U.S.C. § 1997e (c)(2) ("In the event that a claim [] on its face . . . fails to state a claim upon which

3    relief can be granted, . . . the court may dismiss the underlying claim without first requiring the

4    exhaustion of administrative remedies."); see also Sorce v. Garikpaetiti, 2014 WL 2506213, at *3,

5    2014 U.S. Dist. LEXIS 76431, at *8 (S.D. Cal. May 30, 2014) ("based on Plaintiff's concession

6    of nonexhaustion, which is clear and unequivocal on the face of his Complaint, the Court finds

7    Plaintiff's case must be dismissed [on screening] for failing to state a claim upon which any relief

8    may be granted") (citations omitted); Young v. Unnamed, Secretary of CDCR, 2014 WL

9    5176386, at*4, 2014 U.S. Dist. LEXIS 146472, at *8 (S.D. Cal. Oct. 14, 2014) (on screening and

10    "based on Plaintiff's concession of nonexhaustion, which is clear and unequivocal on the face of

11    his Complaint, the Court finds that even if Plaintiff had sufficiently alleged an Eighth

12    Amendment claim against the Secretary, his Complaint would still be subject to dismissal . . . for

13    failing to state a claim upon which relief can be granted") (citations omitted); Lucas v. Director of

14    Dept. of Corrections, 2015 WL 1014037, at*4,  2015 U.S. Dist. LEXIS 27957, at *9 (E.D. Cal.

15    Mar. 5, 2015) (on screening plaintiff's FAC, in which plaintiff conceded that he had not

16    exhausted his administrative remedies before he commenced the action, the court found that

17    plaintiff's "attempt to initiate federal litigation prior to his full administrative exhaustion requires

18    dismissal of this civil action without prejudice to plaintiff's bringing of his now exhausted claims

19    in a new civil action") (citations omitted); Eha v. California Institute for Men, 2015 WL 8664155,

20    at *3, 2015 U.S. Dist. LEXIS 27957, at *8 (C.D. Cal. Dec. 10, 2015) ("Plaintiff's 'concession to

21    nonexhaustion' in his Complaint and in his First Amended Complaint warrants dismissal at the

22    pleading stage.") (citations omitted); Morehead v. Kern Valley State Prison, 2016 WL 3136034,

23    at *2, 2016 U.S. Dist. LEXIS 72234, at *5 (E.D. Cal. June 2, 2016) (dismissing FAC on

24    screening on the ground that,"[w]hile the Court typically grants leave to amend in a pro se cases

25    (sic), Plaintiff's clearly conceded failure to exhaust cannot be cured by the allegation of additional

26    facts.").

27                    B.      Pleadings and Grievances

28            Both plaintiff's original complaint and FAC challenge defendant Roddrick's alleged use

of excessive force on August 31, 2014, when he reportedly slammed plaintiff's hand in his food tray slot in retaliation for plaintiff filing a grievance against Roddrick. Additional defendants are named based on their alleged failure to adequately respond to the incident. See ECF No. 1 at 4; ECF No. 15 at 3. Plaintiff concedes that he did not exhaust his administrative remedies on this matter before commencing this action, or before filing the FAC.

In his original complaint, filed October 13, 2014, plaintiff averred that his administrative remedies were then "in the first level." See ECF No. 1 at 2. The December 2014 order of this court, which found cognizable claims against defendant Roddrick, did not address this matter. See ECF No. 11. Plaintiff did not assert that the grievance process was unavailable to him, but implied that he was afraid to use the process.[3] Exhibits to the complaint include plaintiff's administrative grievance submitted August 17, 2014 (**Log No. HDSP-C-14-02461**), and the First Level Response to that grievance issued September 3, 2014. See ECF No. 1 at 9-17. Although this grievance includes allegations against defendant Roddrick,[4] it is not relevant to the allegations and claims asserted against Roddrick in plaintiff's original and amended complaints.

Also attached to the original complaint is an October 7, 2014 letter to plaintiff from the

---

[3] Plaintiff explained, ECF No. 1 at 2:

> State Officials are retaliating against me, causing a substantial risk upon my well-being and safty (sic). The inmate grievance is in the first level and internal affairs is involved with the investigation but state officials are threatening inmates that are around me who witnessed the facts contained in this complaint.

Plaintiff also "ask[ed] the courts to force the Prison to Grant a Safe remedy for exhaustion of administrative remedies[.]" Id. at 3.

[4] In this grievance (**Log No. HDSP-C-14-02461**), plaintiff alleged that on August 17, 2014, he "became a victim of retaliation due to me not being able to attend worker yard and worker dayroom because I filed a 602 on C/O Mcnott (sic) [MacNaught] regarding me not being able to work." Id. at 14. Plaintiff explained that "Watch, C/O [MacNaught], Irish and Roddrick, didn't allow me to go to worker yard because I 602ed [MacNaught]." Id. at 16. Plaintiff expressed fear for his safety and life based on [MacNaught]'s alleged statement that "You'll regret ever filing a 602 against me. You must of (sic) forgot that I will be working in the tower." Id. Plaintiff further alleged that these actions were "racist and oppressive" because not directed "to Mexicans or the Others." Id. On August 20, 2014, three days after plaintiff submitted this grievance, the Inmate Appeals Office assigned it for First Level Review. ECF No. 1 at 11. The First Level Review decision was issued on September 3, 2014. Following an interview with plaintiff, staff construed plaintiff's retaliation claim as limited to MacNaught, and found that CDCR policy had not been violated. Id. at 9-10. On September 30, 2014, plaintiff challenged the First Level Review decision, asserting in part that he was also challenging the conduct of Roddrick and Irish as well as MacNaught. Id. at 15, 17.

HDSP Warden, noting plaintiff's correspondence with the Office of Internal Affairs about another grievance he had submitted (**Log No. HDSP-C-14-02875**), which alleged the use of excessive force.  (Although not evident in this exhibit to the original complaint, a copy of the grievance is attached to the FAC and alleges excessive force by defendant Roddrick based on the August 31, 2014 incident.)  The Warden's letter indicates that the grievance was then under First Level Review.  ECF No. 1 at 23; see also id. at 26.  The letter documented that, as a result of plaintiff's allegations, "a videotaped Use of Force interview" of plaintiff was held on September 24, 2014, and preserved as **CDCR 3014 Log No. FF-14-09-0256**.  Id. at 23.  No further information concerning this grievance was provided with the original complaint.

Thus, of the two grievances referenced in plaintiff's original complaint, only **Log No. HDSP-C-14-02875** is relevant to the allegations of the complaint, but was then only "in first level review."  ECF No. 1 at 2.

In his FAC, filed January 19, 2015, plaintiff again challenged defendant Roddrick's alleged retaliatory use of excessive force on August 31, 2014, and again stated that he had not exhausted his grievances, explaining only:  "Prison officials are retaliating against me for filing grievances on this matter.  The inmate grievance is in the second level at this current moment."  ECF No. 15 at 2.

A copy of plaintiff's pertinent grievance (**Log No. HDSP-C-14-02875**) is included in the exhibits to the FAC.[5]  See ECF No. 15 at 36, 47.  The grievance, submitted by plaintiff on September 29, 2014, alleges that on August 31, 2014, "C/O Roddrick used excessive force as a form of reprisal for filing 602 **Log # HDSP-C-14-02461**, by slaming (sic) my right hand in the tray slot.  C/O Roddrick was working 2nd watch picking up breakfast trays, for top tier."  ECF No. 15 at 36.  The grievance further alleges that Roddrick conceded that his challenged conduct was in reprisal against plaintiff for naming Roddrick in a grievance.  Id. at 47.  The grievance also names as defendants Hale, Arnold, Ramsey and Nason.  Id.  Plaintiff's requested relief includes

---

[5]  Exhibits to the FAC demonstrate no further exhaustion past the First Level of plaintiff's unrelated grievance alleging retaliation premised on the denial of his access to the worker yard and dayroom on August 17, 2014 (**Log No. HDSP-C-14-02461**).  See ECF No. 15 at 17-28.

1    $750,000 damages from Roddrick; $90,000 jointly from Hale, Arnold and Ramsey "for doing

2    nothing about the matter;" a discussion with the HDSP Warden; the firing of all responsible

3    parties; and transfer of plaintiff to a therapeutic setting.  Id.

4         On October 6, 2014, a week after plaintiff submitted this grievance, the Inmate Appeals

5    Office assigned it for First Level Review.  ECF No. 15 at 40.  The First Level Review decision,

6    issued on October 20, 2014, notes that the investigation of this grievance included interviewing

7    plaintiff, correctional officers Roddrick and Nason, Facility C Captain Hale and Sergeant Arnold,

8    and an inmate witness identified by plaintiff.  The decision concluded that CDCR policy had not

9    been violated but nonetheless "partially granted" plaintiff's grievance on the ground that "the

10   Appeal Inquiry is complete, has been reviewed, and all issues were adequately addressed."  Id. at

11   38.

12        There is no indication in the exhibits to the FAC that this relevant grievance was further

13   exhausted past First Level Review.  Although additional grievances are included as exhibits to the

14   FAC and plaintiff's requests for extraordinary relief,[6] none are relevant to plaintiff's allegations

_____

15   [6]  The following additional unrelated grievances are included as exhibits to the FAC:

16        • **Log No. HDSP-C-14-03113:**  On October 14, 2014, plaintiff submitted this grievance
     alleging that C/O Joksch had refused to process plaintiff's legal mail.  See ECF No. 15 at 72-5;
17   see also ECF No. 14 at 5-8.  The exhibits to the FAC include nothing further regarding plaintiff's
     pursuit of this grievance.

18        • **Log No. HDSP-C-14-03273:**  On October 29, 2014, plaintiff submitted this grievance
     alleging that C/O Joksch had twice refused to process plaintiff's legal mail (specifically,
19   plaintiff's in forma pauperis application).  ECF No. 15 at 61-2.  On November 12, 2014, two
     weeks after plaintiff submitted this grievance, the Inmate Appeals Office assigned it for First
20   Level Review.  ECF No. 15 at 69.  The FAC includes copies of the First and Second Level
     decisions addressing this grievance.  The First Level decision, issued November 26, 2014,
21   "partially granted" the grievance to the extent that staff had investigated plaintiff's allegations
     pursuant to two interviews with plaintiff, and interviews with Joksch and another correctional
22   officer, both of whom reported that they had returned plaintiff's in forma pauperis applications
     with specific instructions how to prepare his correspondence and envelopes for acceptance and
23   processing in accordance with departmental policy.  Id.  A completed in forma pauperis
     application was ultimately mailed out on November 4, 2014.  Id. at 62.  This grievance was
24   referred for Second Level Review on December 11, 2014.  ECF No. 15 at 65; see also ECF No.
     14 at 4.  The Second Level Review decision, issued January 2, 2015, also "partially granted" the
25   grievance based on the fact of reviewing plaintiff's concerns, and concluded that the investigation
     and conclusion reached in the First Level decision were appropriate.  ECF No. 15 at 63-4.  The
26   exhibits do not include any evidence that this grievance was further exhausted.

          Plaintiff also attached additional grievances to his requests for extraordinary relief.  See
27   ECF Nos. 14, 27, 35.  These include the following:

          • **Log No. HDSP-D-14-03725:**  On December 24, 2014, plaintiff was informed that this
28   grievance was assigned for First Level Review.  See ECF No. 14 at 10.  No other exhibits in

1   and claims against defendant Roddrick asserted in plaintiff's original and amended complaints.[7]

2              C.      Analysis

3              Review of plaintiff's original and amended complaints, and exhibits attached thereto,

4   demonstrate that plaintiff did not exhaust his claims through HDSP's administrative grievance

5   process before commencing this action.  Rather, on September 29, 2014, plaintiff submitted to

6   prison authorities his only grievance relevant to the allegations of this action (**Log No. HDSP-C-**

7   **14-02875**), then filed his complaint two weeks later on October 13, 2014.  On October 20, 2014,

8   one week after plaintiff filed his complain, his grievance was "partially granted" on First Level

9   Review.

10             Plaintiff has repeatedly attempted to persuade this court that administrative remedies have

11  been unavailable to him due to the ongoing retaliation of prison officials in response to plaintiff's

12  efforts to utilize the grievance system.  In his original complaint, despite noting that his

13  administrative remedies were "in the first level," plaintiff stated that he sought a "safe remedy for

14  exhaustion."  ECF No. 1 at 2, 3.  In his FAC, despite stating that his grievance was "in the second

15  _____

plaintiff's numerous filings identify the claims that plaintiff pursued in this grievance.

16      • **Log No. HDSP-15-00099:**  On January 5, 2015, plaintiff submitted this grievance
seeking damages from another inmate who allegedly beat up plaintiff at the behest of prison

17  officials, from whom plaintiff also sought damages.  Plaintiff requested that the other inmate be
disciplined, that plaintiff's own disciplinary ruling (see n.5, infra) be overturned, and that plaintiff

18  be transferred to another institution.  See ECF No. 27 at 7-10.  The First Level Review decision,
issued February 1, 2015 and based on interviews with plaintiff and six prison officials, concluded

19  that no staff had violated CDCR policy.  Id. at 11-2.  The grievance was "partially granted" on the
ground that a thorough inquiry of plaintiff's claims had been conducted.  Id.  The Second Level

20  Review decision, issued March 4, 2015, reached the same conclusion.  Id. at 13-5.  Plaintiff
received notification on July 29, 2015 that this grievance had been received for Third Level

21  Review, see id. at 6, but the Third Level Review decision is not included in any of plaintiff's
exhibits.

22      • **Log No. KVSP-HC-15-036736:**  On November 29, 2015, plaintiff submitted this
Health Care Appeal, which he designated an emergency, requesting that he be provided an

23  "Ensure drink" when administered his antipsychotic medication, Geodone, to reduce the side
effects of "cramping nauseating stomach ache and dizzy like head-rush."  See ECF No. 35 at

24  11-3.  The appeal was partially granted on First Level Review based on a decision to switch the
administration of plaintiff's medication to dinnertime.  Id. at 9.  In response, plaintiff withdrew

25  his appeal.  Id. at 12.

[7]  Exhibits to the FAC include documentation of a Rules Violation Report against plaintiff,

26  including a disciplinary finding of guilt to the charge "fighting" with another inmate on
November 4, 2014.  Plaintiff refused to participate in the hearing and was assessed a 90-day

27  credit loss and 10-day loss of exercise yard privilege beginning December 5, 2014.  See ECF No.
15 at 42-59; see also ECF No. 27 at 16-21, 23.

28

1  level at this current moment," ECF No. 15 at 2, plaintiff sought preliminary injunctive relief to

2  "allow the administrative remedies to be made available and exhausted," and a permanent

3  injunction "ordering prison staff to cease their physical violence and threats toward plaintiff

4  Woods, to stop the unsafe and harsh condition of his confinement and to allow the petitioner to

5  safely utilize the grievance system," id. at 15.  In his objections to the undersigned's prior

6  recommendation that this case be dismissed for failure to exhaust administrative remedies,

7  plaintiff asserted that administrative remedies were unavailable to him due to "the retaliation that

8  came with the utilization of the appeal system."  ECF No. 23 at 2.

9       The processing of plaintiff's grievance at the First Level one week after plaintiff filed his

10  complaint contradicts plaintiff's assertion that administrative remedies were unavailable to him

11  when he commenced this action.  Plaintiff contends that he, like the plaintiff in Rhodes v.

12  Robinson, 408 F.2d 559 (9th Cir. 2004), was required to abandon the administrative grievance

13  process and appeal directly to the district court due to the retaliatory conduct of prison officials.

14  See e.g. ECF No. 23 at 4.  Plaintiff's reliance on Rhodes is misplaced.  Although the fact is not

15  explicitly stated in the cited decision, the Ninth Circuit subsequently noted, in Rhodes v.

16  Robinson, 621 F.3d 1002, 1006 (9th Cir. 2010) (Rhodes II), that Rhodes had "asserted properly

17  exhausted claims in his original complaint."  In the same opinion, the Ninth Circuit again made

18  clear that exhaustion of administrative remedies is a prerequisite to commencing suit, Rhodes II,

19  621 F.3d at 1004-05:

20              McKinney held that the PLRA's exhaustion requirement does not
            allow a prisoner to file a complaint addressing non-exhausted
21          claims, even if the prisoner exhausts his administrative remedies
            while his case is pending.  See 311 F.3d at 1199.  Vaden held that a
22          prisoner must exhaust his administrative remedies before he tenders
            his complaint to the district court.  See 449 F.3d at 1050.  Vaden
23          also held that the claims which are exhausted after the complaint
            has been tendered to the district court, but before the district court
24          grants him permission to proceed in forma pauperis and files his
            complaint, must be dismissed pursuant to § 1997e.  See id. at 1050-
25          51.  Together, these cases stand for the proposition that a prisoner
            must exhaust his administrative remedies for the claims contained
26          within his complaint before that complaint is tendered to the district
            court.

27

28

1   Although a plaintiff can add new claims that are newly exhausted in an amended

2   complaint, the claims asserted in the original complaint (and re-alleged in an amended complaint)

3   must have been exhausted when the action was commenced.[8]  Here, plaintiff's excessive force

4   and retaliation claims against Roddrick (and other officials who allegedly failed to act in response

5   to Roddrick's challenged conduct), asserted in both plaintiff's original and amended complaints,

6   were not administratively exhausted when plaintiff filed his original complaint.

7   This court has considered whether the circumstances plaintiff alleges come within any of

8   the "three kinds of circumstances in which an administrative remedy, although officially on the

9   books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859.  In light of plaintiff's

10  frequent use of the grievance process, and the decisions rendered in response to his six HDSP

11  grievances, including the First Level decision on plaintiff's pertinent grievance (**Log No. HDSP-**

12  **C-14-02875**), there appears to be no basis on which to conclude that HDSP's grievance

13  procedures were "opaque" or an effective "dead end," the first two circumstances identified by

14  the Supreme Court to support a finding of unavailability.  Id. at 1859-60.

15  Nor does plaintiff's failure to exhaust this grievance prior to commencing this action

16  appear to come within the third set of circumstances excusing exhaustion under Ross, viz., when

17  "prison administrators thwart inmates from taking advantage of a grievance process through

18  machination, misrepresentation, or intimidation." Ross at 1860.  Although plaintiff's filings

19  allege such conduct by prison officials in each of the facilities where he has been incarcerated,

20  none of his allegations support an inference that plaintiff was thwarted by official misconduct

21  from utilizing HDSP's grievance process prior to filing his complaint.  That plaintiff submitted

22  his grievance prior to filing his complaint, so informed the court in his original complaint, then

23  received a First Level decision shortly after he filed his complaint, demonstrate just the opposite.

24  Moreover, the prison's investigation into plaintiff's grievance appears to have addressed at least

---

25  [8]  New claims, based on actions that took place *after* the original complaint was filed, are not
    barred under McKinney so long as the plaintiff exhausted them prior to filing the amended
26  complaint.  See Rhodes, 621 F.3d at 1005; see also Akhtar v. J. Mesa, 698 F.3d 1202, 1210 (9th
    Cir. 2012.  Moreover, new claims based on actions that took place *before* the original complaint
27  was filed are not barred under McKinney so long as the plaintiff exhausted them prior to filing the
    amended complaint.  See Cano v. Taylor, 739 F.3d 1214, 1220 (9th Cir. 2014).
28

1   some of plaintiff's safety concerns.[9]  These factors fail to support a reasonable inference that

2   prison administrators thwarted plaintiff's efforts to utilize HDSP's grievance process prior to

3   filing his complaint.  Hence, there appears to be no basis on which to conclude that HDSP's

4   grievance procedures were unavailable under any of the circumstances recognized by the

5   Supreme Court.  Ross, 136 S. Ct. at 1859-60.

6         The prompt consideration of plaintiff's relevant grievance on First Level Review, one

7   week after plaintiff filed his initial complaint, demonstrates that administrative remedies were

8   open and available to plaintiff when he filed his complaint.  The possibility that plaintiff's

9   subsequent transfers may have impacted his ability to further exhaust this grievance is not

10  material in assessing plaintiff's options at the time he commenced this action.

11        For these reasons, this court finds that plaintiff's clear concession of nonexhaustion when

12  he filed his original and amended complaints, underscored by his exhibits demonstrating the

13  availability of administrative remedies when plaintiff commenced this action, require dismissal of

14  this action without prejudice for failure to state a claim upon which relief may be granted.  See

15  Albino, 747 F.3d at 1169 (failure to exhaust warrants dismissal without prejudice for failure to

16  state a claim).  Moreover, under these circumstances, such dismissal is appropriate on screening.

17  See 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e (c)(2); accord Sorce v. Garikpaetiti, 2014 WL

18  2506213, at *3, 2014 U.S. Dist. LEXIS 76431, at *8 (S.D. Cal. May 30, 2014); Young v.

19  Unnamed, Secretary of CDCR, 2014 WL 5176386, at*4, 2014 U.S. Dist. LEXIS 146472, at *8

20  (S.D. Cal. Oct. 14, 2014); Lucas v. Director of Dept. of Corrections, 2015 WL 1014037, at*4,

21  2015 U.S. Dist. LEXIS 27957, at *9 (E.D. Cal. Mar. 5, 2015); Eha v. California Institute for Men,

22  2015 WL 8664155, at *3, 2015 U.S. Dist. LEXIS 27957, at *8 (C.D. Cal. Dec. 10, 2015);

23  ////

24

25  [9]  HDSP officials promptly undertook an apparently thorough investigation of plaintiff's claims against defendant Roddrick for excessive force and retaliation, and plaintiff's related claims against other HDSP officials, by conducting a videotaped interview of plaintiff premised on his

26  allegations of excessive force, and by conducting additional interviews with four prison officials and another inmate.  When plaintiff was interviewed by Captain Davidge and invited to provide

27  "any additional information," he reportedly stated only, "No, my appeal stands as it is written and I don't have anything else to add."  ECF No. 15 at 37.

28

14

1 Morehead v. Kern Valley State Prison, 2016 WL 3136034, at *2, 2016 U.S. Dist. LEXIS 72234,

2 at *5 (E.D. Cal. June 2, 2016).

3       IV.    Extraordinary Relief

4       The following motions for intervention and/or preliminary injunctive relief remain

5 outstanding:  (1) plaintiff's "motion for protective order," filed September 20, 2105, challenging

6 matters at CSATF, which was addressed by the AG's status report and supporting declarations,

7 ECF No. 27; (2) plaintiff's "motion for court order," filed October 7, 2015, challenging matters at

8 CHCF, ECF No. 31; and (3) plaintiff's "motion for order of protection," filed January 4, 2016,

9 challenging matters at KVSP, ECF No. 35.

10       A.    Legal Standards

11       In cases brought by prisoners involving conditions of confinement, a preliminary

12 injunction "must be narrowly drawn, extend no further than necessary to correct the harm the

13 court finds requires preliminary relief, and be the least intrusive means necessary to correct the

14 harm."  18 U.S.C. § 3626(a)(2).  "A plaintiff seeking a preliminary injunction must establish that

15 he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

16 preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

17 public interest."  Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008).  The

18 principal purpose of preliminary injunctive relief is to preserve the court's power to render a

19 meaningful decision on the merits of the case, see 11A Charles Alan Wright & Arthur R. Miller,

20 Federal Practice and Procedure, § 2947 (2d ed. 2010), that is, to preserve the status quo pending a

21 determination on the merits, Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1023 (9th Cir. 2009)

22 (citation omitted).  An injunction against individuals not parties to an action is strongly

23 disfavored.  Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100 (1969).

24       B.    Analysis

25       Plaintiff's various requests for extraordinary relief are directed, respectively, to officials at

26 CSATF, CHCF and KVSP, while plaintiff's FAC states claims exclusively against officials at

27 HDSP.  Significantly, each of plaintiff's transfers rendered moot his requests for institution-

28 specific relief at his prior place(s) of incarceration.  Moreover, plaintiff's motions do not conform

1    to the basic requirements noted above, as they seek orders directed to prison officials who are not

2    parties to this action, concerning matters unrelated to plaintiff's claims.  Plaintiff's requests for

3    access to his legal materials and the law library, better quality mental health care and medical

4    treatment, and his efforts to stop the alleged retaliation of various prison officials, required

5    administrative exhaustion at the facility in which the alleged conduct occurred.  Plaintiff must

6    exhaust institution-specific claims through that institution's administrative grievance process

7    before he can proceed in this court with a cognizable civil rights action in which he may then seek

8    preliminary injunctive relief.  In the absence of a sustainable underlying action, this court is

9    without authority to grant extraordinary relief.[10]

10        Accordingly, should the district judge adopt this court's recommendation that the instant

11   case be dismissed without prejudice, this court further recommends that each of plaintiff's

12   requests for extraordinary relief be denied as moot.

13        V.    Conclusion

14        For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

15        1.  This action be dismissed without prejudice for failure to state a claim on which relief

16   may be granted due to plaintiff's failure to exhaust administrative remedies before commencing

17   this action, see 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e (c)(2); and

18        2.  Plaintiff's requests for extraordinary relief, ECF Nos. 27, 31, 35, be denied as moot.

19        These findings and recommendations are submitted to the United States District Judge

20   assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

21   after being served with these findings and recommendations, plaintiff may file written objections

22   with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings

23

24   _____

     [10]  Notwithstanding the limitations on this court's ability to substantively review unexhausted
25   claims and issue injunctive relief directed at non-parties, the undersigned did (as previously
     noted) direct the AG to inquire into the matters challenged by plaintiff when he was incarcerated
26   at CHCF.  ECF No. 28.  The declarations obtained by the AG from plaintiff's treating physician
     and psychiatrist indicated that plaintiff was then receiving regular and appropriate mental and
27   physical health care.  ECF No. 29.  In the absence of a cognizable civil rights action, this court is
     without authority to direct the AG to continue to track plaintiff's care.
28

1    and Recommendations." Plaintiff is advised that failure to file objections within the specified

2    time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153

3    (9th Cir. 1991).

4    DATE: July 28, 2016

5    _____

6    ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28